The next matter, number 23-1362, State of New Hampshire v. 3M Company. At this time, would counsel for Appellant 3M please introduce himself on the record to begin. Good morning, and may it please the Court. Michael Scotro on behalf of the defendant, Appellant 3M Company, and with the Court's permission, I would like to reserve three minutes for rebuttal. Yes, you may. Thank you, Your Honor. The District Court in this case made two legal errors. First, the Court concluded that this action does not even relate to 3M's production of MilSpec AFFF. But the central dispute in this case between the parties will be, in places, over whether and to what extent PFAS in a given river or other resource is the product of MilSpec AFFF produced by 3M. At a minimum, therefore, this case easily relates to 3M's manufacture of that product. The Court's second error was to conclude that What do we do when you're using the relate formulation? Yes, Your Honor. And Willingham and Jefferson translate it to constitute the basis of. And I know the statute was then revised thereafter, but there's no holding by the Supreme Court or any suggestion that that statute changed the law as far as what the Supreme Court had said in Willingham and Jefferson. And so aren't we bound by that formulation? No, Your Honor. The Supreme Court, first of all, has used broad language. It did that certainly in Acker, and even in Willingham, said that so long as there is a federal interest in the case, that that was the lodestar inquiry for the Court. But more importantly, what matters is how courts have interpreted since the 2011 amendment. And we do know what Congress, I mean, they made clear, as we point out in our brief, they were intending to expand the scope of federal officer removal to go past what had been the past causation standard that had been used historically. Court after court has recognized this, including this court in Moore in 2022, noting that Congress had broadened the universe in moving to related to it. And I think what the district court did here, after citing Moore and discussing Moore as a framework at the outset, then quickly pivots and talks and uses the word resulted twice, talking about the fact that because the contamination that will be alleged in this case wasn't, quote, unquote, the result of MilSpec AFFF, and we can talk about that separately. But even if that were the case, that isn't the inquiry. The inquiry is, is does this case, is there a federal interest, to use the Supreme Court's prior vocation, is there a federal interest because, as Congress has now put it, that this case relates to the production. How is there an interest if there's no MilSpec at that particular site that is the subject of the litigation? Right. So I do want to be clear in drawing this line, Your Honor, and responding to Your Honor's question, that there's a distinction between the related to inquiry, which is one prong of the removal requirement, and a separate question of will the federal defense be in play and will it be colorable. Right. So with regard to related to, the fact that there is a dispute and will be a dispute over which resources have co-contamination, over how to disaggregate, if it's even possible, these molecules all look identical. There's no way of looking at a particular molecule, to my knowledge, and saying that came from AFFF, MilSpec AFFF, non-AFFF. So with regard to the relating to, Your Honor, it will relate to because at the crux, again, of this dispute will be figuring out what portion, if you can disaggregate, and what portion is attributable to materials produced for the United States military. Counsel, it just seems that your argument is really, it comes down to the fact that a federal court has to do that disaggregation analysis. And I guess what I'm struggling with is my understanding of the case law is you're entitled to go to federal court so that a federal court can review your defense. But here, your federal officer defense here, there's an explicit statement that they will not be seeking any damages from you, any liability based on MilSpec. So you wouldn't have to raise the defense. The defense won't be at issue because they've already conceded that if it has to do with MilSpec, they're not recovering. So why can't a state court do a causation analysis? What case law, what do you have that says that just causation, not the assessment of the defense, causation has to be done by a federal court rather than a state court? Well, so to be clear, if Your Honor is asking about the related to element and what courts have said regarding why the causation, why the teasing out of causation is something for a federal court to do, I would give a couple of answers. One is the plain language that it plainly relates to. And again, that's the plain language the district court didn't apply. See, that's what I'm struggling with because what it says is that the charged conduct was carried out for relating to asserted official authority. But here the charged conduct explicitly excludes MilSpec. So they filed a complaint that says this is not about MilSpec. It's about other commercial products entirely. And so how can that charged conduct be relating to asserted official authority? Well, the inquiry under the statute as the courts have applied it, as I understand it, Your Honor, is does this cause of action, do these claims relate to the production of MilSpec AFFF? And when a centerpiece of those claims is the need to disaggregate, I would hazard that clearly the claims relate to the production of MilSpec. I think Your Honor's question would have been a much harder one to answer before Congress amended the statute in 2011 to require causation. But how do the claims relate to it when they've explicitly said we're not pursuing those claims? We're not pursuing any liability or any damages based on MilSpec. We're suing for other commercial products. Because, well, again, and I do want to weave in some case law to this, too, because the Seventh Circuit in Baker reached this conclusion that this is precisely the kind of complex threshold decision that the federal court needs to make in this very context. The Michigan federal court in Nestle, a very similar fact involving AFFF, made precisely the same finding that it relates to because the claim itself, to litigate the claim will require significant attention to the production of MilSpec AFFF, its origins and how to disaggregate. Now, in addition to those cases, I would add there's a separate argument. But if no one is seeking to impose liability for anything to do with MilSpec,  you could have a lawsuit that has to do with discovery that gets into federal stuff. But the federal officer defense isn't liable. The federal government might not even be a party. Or the federal officer might not even be a party. So, Your Honor, to answer this question, I think this does squarely shift us into the third element of removal, the one the district court did not review, which is, is there a colorable federal defense? So, putting aside related to elements, whether or not there's a colorable defense, the question is 3M's concern here, is its claim frivolous? Is it going to be able to raise a colorable federal defense in state court? And the answer is clearly no. It isn't frivolous. And here's why. We have, for example, a statement by the district court at page 19 of the district court's opinion, hypothesizing as to what the meaning of the disclaimer will be as applied by a state court. We have the state's paraphrase of that same articulation on page 30 of their brief, and this is something that we discuss in our reply as well. And it's not at all clear that these are matched up. That is, it's not at all clear what, at the end of the day, how this will unfold in a state court. And I particularly would focus on an area where there is alleged crossover contamination, plausible crossover contamination between MilSpec AFFF and non-AFFF sources. And you're looking at these molecules, and there will be a dispute over, is this, can one disaggregate? Right, but the dispute won't be about we had to produce MilSpec in the precise way that we produced it because the federal government required us to. That's not going to be the dispute, which is what the defense is. The dispute is just going to be New Hampshire will say to the extent it's MilSpec, we're not claiming damages, and you may just disagree about the amount. That's it. It's not about your actual defense of we were required to manufacture this in this specification because that's what the federal government required of us. So how does the defense even come up? Two points there, Your Honor. At the threshold, and as I was alluding to the fact that I'm not, as I stand here, I don't know that we know how that will play out. That is to say, if there is a commingled source, for example, or one that there is plausible evidence of commingling, will the state's position be that under those circumstances, they are not entitled to seek anything, which is how the district court tried to capture that notion on page 19 of the opinion, or will it be something that sounds closer to their brief, which suggests that under those, they are able to recover for harm done so long as some of that harm originates in MilSpec AFFF. Under those circumstances, we would absolutely have to raise the federal officer defense and the federal interest would be at its peak because there would be an effort to collect on damage that is allegedly in part the result of, allegedly in part the result of materials made for the military. Suppose you have two sites right next to each other, one MilSpec indisputably, one non-MilSpec indisputably. Someone claims at night he fell into one of them and was poisoned, all right? And he says, it was a non-MilSpec one I fell into. The defendant comes in and says, no, we think you fell into the MilSpec one, so it's federal officer defense. You seem to be saying that the court's adjudication of which site he fell into would have to be done by a federal court. And that's not clear to me why that would be the case. So, yes. Can't the state court just decide you fell into the non-MilSpec one so there's no federal defense and no one can claim it? Or you fell into the MilSpec one, in which case they've agreed you're not liable. So, two points, Your Honor. I think there are two answers to Your Honor's question. First, I do think, I mean, consistent with the Seven Circuits holding in Baker, consistent with the treatment in Nestle, the notion that this is a threshold determination that is part and parcel of this same analysis needs to be in a federal court. And you look at the rationale undergirding the federal officer defense. So your answer to my question is yes? Yes. Only a federal court could decide which site he fell into? Correct, but this is a very different case. What I'm describing here is this. What would happen if the federal court then decided he fell into the non-MilSpec one? Under those circumstances, then the defense would fail. But the question at the threshold in deciding who has jurisdiction is, is it frivolous to think that a federal was the federal one? And our allegations are clear here. We have easily satisfied and plausibly fled. Under my example, neither answer to the question, A or B, did he fall into which site, could result in any liability for MilSpec. In other words, if they found it was in the non-MilSpec one, then there's no liability for MilSpec. And if they found it was the MilSpec one, then you win because of your defense. Well, we would be able to assert the defense. Well, let's assume you win because of their admission that they're not even seeking to impose liability for that. But again, Your Honor, this is why this hypothetical is, I think, far less complicated than our circumstance. Here, as I've noted, it is by no means clear how this is going to be fleshed out in the trial court. Will it be the case that, putting aside the fact that we can raise the defense in the course of arguing that it's only 10 percent, it's only 20 percent, when the state may say it's 80 or 90. We may raise the defense in the context of arguing that it's- But that's not the defense. That's just the question of causation. Well, you're right. It is the question of causation, but it tees up. Let me, if I can just conclude. You're right. But it does tee up the application of the defense. And I would note, finally, the further complication is it's not as simple as the two potential buckets. We have here a lot of unknowns in terms of where the state will be. Let's imagine, so the district court has said that if there is commingling, then the state cannot recover from that body of water. Will that be the position, or will it be, again, what is suggested elsewhere potentially, which is that as long as there is some non-mil spec in the combination, then there will be recovery. And that is certainly a place where the federal officer defense would be raised. And at the end of the day, what truly matters is there's nothing frivolous here about 3M's contention, that they will need to raise that defense. You've reserved some time.  Thank you. Thank you, Counsel. Counsel for the appellee could please introduce himself on the record to begin. Thank you. Hello, Your Honor. May it please the Court. Ken Sansone for the appellee, the State of New Hampshire. And I would begin by respectfully suggesting that the response to Judge Kayeda's hypothetical here says it all. The standard for federal officer jurisdiction is a black and white one. The action or the charged conduct or the complaint of conduct is what needs to have some relationship to actions allegedly taken on behalf of a federal officer. And there's been a good deal or a good bit made of the amendment to the statute 44-2A-1 in 2011. But, of course, this Court's post-amendment case law, in particular, Rhode Island v. Shell and Moore v. Electric Boat, those both articulate the standard precisely the same way. That's the case law that the District Court applied in finding that there was no relationship between those two things here because the State of New Hampshire has been very clear from day one when it filed two separate lawsuits in the same court and the same day that this particular case is not about harm from AFFF, which, of course, is the only product that 3M is standing here claiming it made at the behest of a federal officer. So for that very simple reason, according to that very simple standard, and it's important that jurisdictional standards be simple and administrable, there is no federal officer jurisdiction here, and the District Court correctly determined that there wasn't. And some of the formulations that we've heard from 3M about whether a case raises complex questions about whether the federal officer defense would apply, I would suggest are misguided and are not supported by the case law. And as Judge Cayetta's hypothetical illustrates, are very difficult to administer. It sounded like counsel was saying, well, there wouldn't be federal officer jurisdiction over that case because whether he fell into one pit or the other is really simple, but this case is more complicated, so there is federal officer removal jurisdiction here. That's not what any case says. That's not what any administrable judicial standard for jurisdiction could look like. What about the Baker case, counsel? So in the Baker case, there were two. There was a removal by first Atlantic Richfield, and then a supplemental removal by a different defendant, Dow and Camores, essentially. And there, Atlantic Richfield said, you know, this is a case about contamination from particular contaminants at a particular site, and there was a nearby site where we were handling those kinds of contaminants and operations that we were carrying out on behalf of the federal government. There was no disclaimer by the plaintiffs in that case that the contamination they were complaining of, the complaint of conduct, was unrelated to what was going on at that site where those operations for the military were being carried out. What 3M is relying on, and I would suggest this is the only thing 3M is relying on for this very unusual articulation of the standard for federal officer jurisdiction, is a footnote that the Baker opinion used to talk about the Dow situation, which of course was dicta because if there was federal officer jurisdiction over the claims against Atlantic Richfield, it was also there over Dow. And what had happened there was I would submit the kind of bogus disclaimer that the courts, and we've cited all of this case law in our briefing, have found to be ineffective when it comes to federal officer jurisdiction. Specifically, the plaintiffs said, we're suing Dow for what it did between 1910 and 1945. And then they also said, but we're not suing Dow for anything that it did on behalf of the federal government during World War II. And so that makes that case, and again, that's dicta, I would say, and it's certainly not any attempt to distinguish or overrule all of those cases that have recognized that disclaimers are generally effective if they're legitimate. But that was just a simple, I think, effort to deal with that, and that's exactly what the court said. The plaintiffs cannot have it both ways. And there's no claim that we've tried to have it both ways in this case. Again, we've been very consistent. The district court found that we were, and 3M's not taking issue with that. We are not suing 3M in this case for AFFF, and that means there's no federal officer jurisdiction. And I would submit there's no case to the contrary, and accepting 3M's position would require an effective overruling of that entire body of case law that recognizes that disclaimers are effective. Suppose, with reference to the hypothetical I proposed to Lurago, suppose there's a third site that's 50% of each product intermingled indistinguishably. How does that, what happens to damages claimed by that site under the state's disclaimer? So whether 50% of contamination at a particular site from the product for which the plaintiff is actually suing the defendant is enough to make that defendant liable for cleaning up that entire site, under state law is fundamentally a state law question that has nothing to do with the government contract or defense. So 3M's suggestion that, well, this is somehow defeating our right to a federal forum because we could have to clean up a site even though 100% of the contamination at that site didn't necessarily come from non-AFFF products, that has nothing to do with the government contract and defense, and this was actually observed by Judge Barbaduro very astutely at the hearing on the motion to remand. That is just a simple matter of state law. And again, there are all kinds of cases that have recognized disclaimers for what I would argue are classic indivisible injuries. A plaintiff who got sick from working with asbestos products but said, I'm only suing the defendant for the asbestos products they supplied to my private employer, not that they supplied to the military during my prior experience when I was also working with those products in the military. So if those kinds of cases the disclaimer is effective in and there's not some special exception created where courts are saying, well, there's federal officer jurisdiction anyway because how can we sort all that out as a factual or legal matter? That means that there isn't any federal officer jurisdiction here. And again, the standard is very clear and no case has wavered from it. The complaint of conduct, the conduct charge, that's how it's been articulated by the Supreme Court and by this court. That needs to, and it can be for or it can be relating to, to the acts allegedly undertaken at behest of a federal officer, and that's not the case here. Counsel, can I move you to the timeliness issue? Of course. Putting aside the cases about other papers from other lawsuits, they seem pretty unique to me, the circumstances in which that was permitted. If we put those aside, do you think that the initial disclosures were sufficient to provide notice here? Yes, I do, and the district court certainly thought so. Those were provided, of course, in December of 2021 and 3M didn't remove until three or four months later. In April of 2022, those initial disclosures contained a list of sites for which the state is seeking recovery in this case, and some of those sites are the universe of sites in which 3M in its notice of removal cited under this commingling theory, which is 3M's entire theory of removal, is that even if the state is saying, no, no, no, we're not suing you for anything to do with A111, again, that's what the state said when it made those disclosures. We can still remove because federal officer jurisdiction still exists. Well, then the clock had to have started at that point at the absolute latest, because that, of course, is 3M's whole theory of removal, and this is exactly what the district court found. 3M can't have it both ways. It can't be the case that legally the disclaimer is completely irrelevant to the question of federal officer jurisdiction, which, of course, is their position. But on the other hand, because the state kept making that disclaimer, we never had to remove. We didn't need to remove until we were good and ready to remove, and the district court found that that was the latest time that the clock should have started, and actually the clock started a lot earlier when, again, on the same day in the same court, not only the complaint initiating this case was filed, but also the complaint initiating the AFFF case, which was subsequently removed without objection from the state to federal district court and later moved to the MDL, was filed because, of course, the complaint in this case says, and there's no dispute about this, this suit has nothing to do with AFFF, we're not suing 3M for AFFF in this case, because that's the subject of a separate action. And, of course, it was that separate action, which was the subject of the complaint, that was removed. So the other paper rule is just not nearly so inflexible or blind to reality, I would suggest, to support the outcome that when you have a defendant that served with complaints filed in the same court on the same day, which, again, 3M has essentially said, are largely identical to each other, and one references the other that we have to pretend like that other thing, which is specifically referenced in this thing, has nothing to do with whether the removability clock starts or not. And I don't believe that interpretations of the other paper rule that this court or other circuit courts have endorsed go nearly that far. Counsel, how many sites did 3M list in the ultimate notice of removal in this case, do you recall? I don't recall off the top of my head, but a few, I think I would say. Yes, and again, you know, what 3M was saying is, you know, we've received initial disclosures in this case, they talk about these sites and the state is saying that these sites are non-AFFF sites, but we actually think that they are AFFF sites, at least to some degree, so that means that we can remove. So what follows from that is that the clock started when 3M got the initial disclosures at the absolute latest. And again, I think that was apparent from the fact that, you know, 3M knew enough to remove the AFFF case with, again, references to specific sites three years prior to that point, when it received, again, the complaint in this case and the complaint in the AFFF case on the same day. So I just think that this is a situation of 3M trying to have it both ways. What the state says in terms of disclaimer just does not matter for purposes of whether there's federal office or jurisdiction, but we couldn't have possibly known, it couldn't have been clear that there was federal office or jurisdiction because these disclaimers keep getting made. As the district court observed, that has nothing to do with facts that may or may not have been known to 3M. That, according to 3M, is just a simple legal matter, which, again, the law hasn't changed. In 3M's view, of course, we vehemently disagree that this is the law. We believe, as we've said, that these disclaimers are effective and that courts have repeatedly recognized that they're effective and that they are absolutely consistent with the standard for federal office or jurisdiction that's set forth in the statute, recognized by the Supreme Court, and recognized by this court, even after that statute was amended, and nothing in Baker or that case from the Eastern District of Michigan changes that. I have a couple minutes left. The state did, as this court is aware, make a motion to dismiss this case, and I just want to make sure that we've been clear on the basis for that, dismiss this appeal, I should say. We're not arguing that there is not generally appellate jurisdiction over an order remanding a case that has been removed on the alleged basis of federal officer jurisdiction. What we're saying is that because of 3M's purposeful inaction from the issuance of the District Court's remand decision, until the time it was sent back to the Superior Court and proceedings thereon resumed in the Superior Court, there's no longer any effective relief that can be granted. How was their inaction? They filed their notice of appeal first. The notice of appeal was filed, Your Honor, and then the remand decision was issued. The case had not been sent back. We contacted counsel for 3M, and this is all in support of our motion. We asked, can we contact the clerk and ask that the case be sent back to Superior Court? 3M said, we have no objection to that. The result of that process was an order from the District Court saying, I've issued this remand order. We plan on sending it back to Superior Court by this date unless any party moves for a stay, and citing this Court's decision in 4600, and 3M didn't take the District Court up on that interpretation. And what happened, of course, in 4600 was this Court's opinion authored by Judge Selyus said, importantly, there is no question of waiver or estoppel here because the removing defendant acted promptly as soon as the remand order issued, but it was immediately sent back to the Superior Court. So this is the exact opposite of that, and I suggest that it does have an effect on whether the principles of federal state comedy that were employed to retrieve that case from Superior Court as improvidently remanded there should be used for 3M's behalf here when very much unlike the defendant in that case, 3M purposely decided not to try to prevent all that from happening. Proceedings have resumed in the Superior Court. Thank you. Thank you, counsel. At this time, counsel for the appellant would reintroduce himself on the record. He has a three-minute rebuttal. Thank you. Michael Scoggio for the defendant appellant. I do want to touch on a few points that were just discussed. To be clear, with your Honor's hypothetical, Judge Kanna, there would have been federal officer removal in the hypothetical. It's just that at the end of the day, the defense might have failed because the Court would have concluded that it wasn't Milspec AFFF. And I think that what was just said here makes perfectly clear why the defense will be in play below. There was a statement made that if, for example, a water body is shown to be 50% Milspec and 50% something else, assuming the parties could agree on that or that is determined in some way, that 3M would have the obligation to clean up that water body. Well, under those circumstances, which were just discussed, 3M would absolutely raise the federal officer defense because we would have a finding that only 50% of the water body would be attributable to Milspec, and that would be subject to the defense. So under the hypothetical, Judge. But I think they're saying under New Hampshire law, if you had 50%, that's enough to make you liable for the whole thing, no matter who else has the other 50%, sort of like some of the Superfund laws. But under those circumstances, the point would be that 3M would be asked to be remediating for material molecules. But only on account of your non-Milspec. But only on account of the non-Milspec. But, I mean, we would certainly raise the defense under those circumstances. But wouldn't it be irrelevant if state law provides that you have to remediate if 50% is for non-Milspec? So it's irrelevant what the other 50% is for, in other words. Well, Your Honor, respectfully, I think the federal interest persists in that there would be an ability to raise a federal defense to that state law claim under those circumstances. One could easily imagine a state law that made it even more lopsided. But I do think what we've covered makes clear that the federal defense, it sounds like, will be raised and will be in play in the state court. I am interested in what you have to say about the waiver issue in terms of when the judge gave notice that he was going to send it back. Did anybody have a problem with that? As I understand it, you did not file a notice of appeal or ask for that to be stayed. We did not move to stay in the federal court, as we discuss in our response to the separate motion. The federal standard relies on a number of factors having nothing to do with the merits. A determination was made not to seek a stay under that standard. That happens all the time, as we point out. We have a long site, including- The judge was basically offering you the opportunity to keep it in federal court while we heard the case. Respectfully, Your Honor, we didn't read the court's opinion that way. Why else was he giving you that notice? I understood that Judge McCafferty was saying that there's a period during which you may move to see if you wish, but I did not have the sense that we were guaranteed a stay. In fact, we did move for a stay in the state court to make clear that it makes sense to wait for this court's ruling before proceeding in state court. But didn't Chief Judge McCafferty, didn't she- The courts issue remand orders all the time, don't they, without giving someone an opportunity to weigh in before they send the case back? Here she took the precaution of asking, and it seems rather strange that we would allow you not to raise it with her, not to ask to keep it, and then we have to coax the New Hampshire courts to send it back now. Well, Your Honor, actually the Judge Tully decision we were just talking about talks about the fact that courts routinely include pauses or other methods to allow for a motion to stay. There's nothing to suggest- Well, why would he have mentioned that if he didn't expect people to avail themselves of the pause? Well, I think the pause was there if you believe that you satisfied the federal standard, including the irreparable harm and so forth and balance of the equities, that you file your motion. But as we point out, there have been decisions, including a recent decision from this case, where there wasn't a motion for stay filed. There's certainly nothing in terms of a stopple effect in not seeking relief under a standard that goes well beyond the merits showing needed to prevail on appeal, and to use that as somehow an argument that by not filing an extraordinary- I mean, the courts have been very clear about that standard. It's an extraordinary request for relief that by not seeking that, somehow you are stopped on the merits of your appeal, which Section 1442 makes very clear or 1447 makes very clear is available. I am not aware of any court coming anywhere close to such a finding, and it simply doesn't make sense and would be inconsistent with the long history of the cases that we cite in our brief, including, as I said, a recent decision of this court. May I take one moment on the timeliness? Yes, and in fact, I have a specific question for you, if I may. I am curious as to your view why 3M wasn't on notice at the time of the initial disclosures, and let me just quote to you from the initial disclosures. It seems that they said that there could be commingling of products at some locations, and this is the quote. Included in these disclosures and in staff knowledge of PFAS impacts to the state, there may be references to investigations or sites with connections to the use of AFFF. Why wasn't that enough to put you on notice? Well, the disclosures did not. What you need is a clear and unequivocal notice that there is commingling between MilSpec AFFF and the sites that they are pursuing, and that was never made clear. Well, they said that there's sites with connections to the use of AFFF in these disclosures. It doesn't say there's plenty of AFFF. There's MilSpec AFFF. This certainly was not coming close to the clear and unequivocal standard required to remove, and I think the notion that somehow 3M sat on its hands, 3M always routinely moves immediately to remove when it can. As it did, there was discussion a moment ago of the AFFF complaint. Of course, 3M moved immediately as to the AFFF complaint. What was unclear about what Judge Brickleman just read to you that was so unclear that it would not even justify a federal officer defense? So let me be very clear in distinguishing between may and must. If the question is, would that have been grounds for a tolerable removal notice, the answer is perhaps, although I still think there would have been a need for the additional research that 3M did and identified in its removal notice, which talks about the water flow and so forth and the potential connections. But that's a may question, is what the Ninth Circuit held in Roth, and as this Court has recognized in Romulus, the bright line required to remove, to start the removal clock is a must bright line. I mean, in Romulus, the facts were all of the facts were actually housed at the defendant, and not until those same facts were echoed back to the defendant by the plaintiff in an e-mail or letter did the 30-day clock begin to run. So it has nothing to do with subjective knowledge. The Court has repeatedly said clues that should make you want to hunt for bases. Harris says that's out. All of that is out. It has to be within the four corners of the document. For all the reasons that Romulus and other federal appellate courts have embraced, that you need a bright line. But doesn't it have to be, I'm sorry, I don't quite recall the quote, but it's not that it has to be within the four corners. It's that your client with reasonable intelligence could understand that it was on notice, right? That's the standard. So I guess my question is why what I read to you before, which is that the initial disclosures specifically say that there may be references to investigations or sites with connections to the use of AFFF, why wasn't that enough for your client using reasonable intelligence to be on notice, to have the 30-day clock ticking? You could do some more investigation, but the clock had begun ticking. So two points with regard to that, Your Honor. What Your Honor has read is that there may be, if I'm getting it correctly, there may be investigations related to other sites. There may be references to investigations or sites with connection to the use of AFFF. Right. So at that point, there still isn't a claim naming those as sites that will be recoverable in the state's theory. That would have to be expressed. There would have to be something that makes very clear that there is, through fate and transport, there is a commingling of AFFF, MilSpec AFFF, and non. And let me bridge the gap that I think Your Honor is asking about with regard to the sort of reasonable intelligence. The exception that proves the rule with regard to reasonable intelligence, the case that other courts cite back to, is a decision called Cuxhausen. And the reasonable intelligence that was demanded by the court in that instance was that the defendant look at the face of the complaint, take the numbers, the damaged figures that appeared on the face of the complaint, and multiply them. Because by doing so, the defendant would know that the jurisdictional threshold in the monetary ask had been reached. That is the extent to which courts have gone in requiring anything outside the four corners in terms of common sense. But is that very different from reading a map and seeing that one of the sites is right next to a facility that used MilSpec AFFF? What's really the difference between adding numbers or looking at a map? There is a lot more. I mean, looking at the removal notice makes this clear. And the degree to which, again, always has been eager to remove, when possible, the sorts of science and other material regarding fate and transport that was needed to make that claim credibly. And I should add, were there any doubt about this? In April of 2022, so this is after the December disclosures that we're talking about. In April of 2022, the JPML court, is that the right date? If you're going to let us know about another ruling, just send us a 28-J letter. Oh, no. This is actually part of the record. It's in the appendix. I'll give you 30 seconds. Thank you, Your Honor. The JPML, in August of 2022, looking at all of the same material, concluded that it was not clear, even at that point, that the sites that were being identified by the state overlapped in any way and that there would be any commingling with MilSpec AFFF. And that was over our objection. The argument was made by the state that the two lists were different. The disclosure list that you're describing, Your Honor, was different than the list in the fact sheet that they had submitted in the AFFF and the MSL. And so the JPML panel unanimously concluded that even at that point, months after the language Your Honor read, it was still not possible to know whether there would be overlap. So clearly it comes nowhere close to what's required for the clear and unambiguous notice. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.